**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

DALI WIRELESS, INC., a Delaware   )
corporation,   )
  )     C.A. No.: 19-952-MN
         Plaintiff,   )
  )     **JURY TRIAL DEMANDED**
v.   )
  )     **PUBLIC VERSION**
COMMSCOPE TECHNOLOGIES LLC, a   )
Delaware company, and COMMSCOPE   )
HOLDING COMPANY, INC., a Delaware   )
corporation,   )
  )
        Defendants.   )


<u>**DEFENDANTS' REPLY BRIEF IN SUPPORT OF ITS**</u>
<u>**MOTIONS FOR SUMMARY JUDGMENT AND**</u>
<u>**TO EXCLUDE THE OPINIONS AND TESTIMONY OF JAMES J. DONOHUE**</u>


OF COUNSEL:

CARLSON, CASPERS,
 VANDENBURG & LINDQUIST PA
Philip P. Caspers
Samuel A. Hamer
Tara Norgard
William F. Bullard
 225 South Sixth Street
Minneapolis, MN 55402
612-436-9600


Kelly E. Farnan (#4395)
Valerie A. Caras (#6608)
RICHARDS, LAYTON & FINGER, PA
One Rodney Square
920 North King Street
Wilmington, DE 19801
302-651-7700
farnan@rlf.com
caras@rlf.com

*Attorneys for Defendants CommScope Technologies LLC and CommScope Holding Company, Inc.*


Dated: November 12, 2021

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................................ iii

Introduction .................................................................................................................................. 1

Argument ...................................................................................................................................... 1

I.      CommScope does not practice the "packetizing" and "translating" steps .......................... 1

        A.      Dali is not following the rule that terms should be interpreted in context .............. 1

        B.      Dali has no answer to antecedent basis for "the" base band signals ....................... 2

        C.      The translating step is not merely a conditional limitation ..................................... 5

        D.      Dali's conditional interpretation does not avoid summary judgment ...................... 9

II.     CommScope does not practice the "routing and switching" step ..................................... 10

        A.      The antecedent basis requirement in the step ........................................................ 10

        B.      The "switching…via the at least one digital access unit" requirement ................ 11

        C.      Dali's DOE theory is either moot or fails as a matter of law ................................ 13

        D.      CommScope's alternative motion to strike ........................................................... 16

III.    The Court should grant summary judgment of no willfulness ......................................... 17

        A.      Dali did not identify any disputed fact on the actual issue of knowledge of
                infringement and merely argues an "inference" ................................................... 17

        B.      The Court should reject Dali's argument about post-suit willfulness ................... 18

        C.      Dali has no meaningful response to CommScope's second argument .................. 18

IV.     Claims 1-3 are invalid .................................................................................................... 19

        A.      Dali's interpretation of "as appropriate" renders the claims indefinite ............... 19

        B.      Derivation .............................................................................................................. 21

V.      Dali fails to show Donohue's damages methodology is reliable ..................................... 21

A.    Donohue's method of allocating 100% of the cost savings of OneCell to the asserted patent is methodologically flawed and fundamentally unsound ............................ 21

B.    Donohue's use of CommScope's ▮▮▮▮ policy is completely unmoored from any accepted methodology ........................................................................................... 23

C.    Donohue's reliance on the Kathrein license is methodologically unsound ........... 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Bicon, Inc. v. Straumann Co.*,
441 F.3d 945 (Fed. Cir. 2006).................................................................................................20

*Competitive Techs., Inc. v. Fujitsu Ltd.*,
185 F. App'x 958 (Fed. Cir. 2006)...........................................................................................20

*Contour IP Holding, LLC v. GoPro, Inc.*,
No. 3:17-cv-04738, 2020 WL 5106845 (N.D. Cal. Aug. 31, 2020) ..................................22, 23

*CSP Techs., Inc. v. Sud-Chemie AG*,
643 F. App'x 953 (Fed. Cir. 2016) ..........................................................................................16

*DataQuill Ltd. v. High Tech Computer Corp.*,
887 F. Supp. 2d 999 (S.D. Cal. 2011)......................................................................................25

*Felix v. Am. Honda Motor Co.*,
562 F.3d 1167 (Fed. Cir. 2009)................................................................................................14

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
535 U.S. 722 (2002)   ..............................................................................................................14

*Georgia-Pacific Corp. v. United States Plywood Corp.*,
318 F. Supp. 1116 (S.D.N.Y. 1970).........................................................................................24

*Halliburton Energy Servs. v. M-I LLC*,
514 F.3d 1244 (Fed. Cir. 2008)..................................................................................................9

*Hanson v. Alpine Valley Ski Area*,
718 F.2d 1075 (Fed. Cir. 1983)................................................................................................23

*Hytera Communs. Co. v. Motorola Sols., Inc.*,
840 F. App'x 555 (Fed. Cir. 2021) .............................................................................................5

*Intellectual Ventures I, LLC v. Symantec Corp.*,
234 F. Supp. 3d 601 (D. Del. 2017).........................................................................................18

*Interdigital Tech. Corp. v. Lenovo Holding Co.*,
No. 19-1590-LPS, 2021 WL 1856937 (D. Del. May 10, 2021) .................................................9

*Kenexa Brassring, Inc. v. Taleo Corp.*,
751 F. Supp. 2d 735 (D. Del. 2010).........................................................................................21

*Lincoln Nat'l Life Ins. Co. v. Transamerica Life Ins. Co.*,
609 F.3d 1364 (Fed. Cir. 2010)........................................................................9

*Looksmart Grp., Inc. v. Microsoft Corp.*,
No. 17-cv-04709-JST, 2019 WL 4009263 (N.D. Cal. Aug. 5, 2019)................................22, 23

*Lucent Techs, Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009)........................................................................25

*M2M Solutions LLC v. Motorola Solutions, Inc.*,
No. 12-33-RGA, 2016 WL 767900 (D. Del. Feb. 25, 2016) ......................................25

*Nexstep, Inc. v. Comcast Cable Communs.*,
No. 19-1031, 2021 WL 4077778 (D. Del. Aug. 20, 2021) ......................................18

*PSC Comput. Prods., Inc. v. Foxconn Int'l*,
355 F.3d 1353 (Fed. Cir. 2004)........................................................................15

*Trs. of Columbia Univ. v. Symantec Corp.*,
811 F.3d 1359 (Fed. Cir. 2016)........................................................................20

*TVnGO Ltd. (BVI) v. LG Elecs. Inc.*,
861 F. App'x 453 (Fed. Cir. 2021) ....................................................................20

*Wasica Fin. GmbH v. Cont'l Auto. Sys.*,
853 F.3d 1272 (Fed. Cir. 2017)........................................................................5

*Wi-LAN, Inc. v. Apple Inc.*,
811 F.3d 455 (Fed. Cir. 2016)........................................................................5

## Introduction

Dali did not dispute that CommScope's non-infringement defenses are ripe for summary judgment.  Dali agreed CommScope's statement of facts for these defenses is "undisputed" with only one hedge.  Responsive Statement of Facts (RSOF) (D.I. 266) ¶¶1-3, 5-8 ("Undisputed"); ¶4 (only hedge).  Dali did not submit a rebuttal statement identifying any material facts for trial.

## Argument

### I.   CommScope does not practice the "packetizing" and "translating" steps

It is undisputed that the accused product ███████████████████████████ ████████████████████████. Per the undisputed facts, "Dali stated on the record during claim construction that the proper claim construction does require translating a downlink RF signal to base band."  CommScope's SOF ¶22; Dali's RSOF ¶22 ("Undisputed"). Dali, however, switched its position after realizing CommScope would not infringe.  Whether the claims require translating a downlink signal from RF to base band involves two legal disputes:

(1) whether "the" base band signals in the packetizing step have antecedent basis in the translating step (CommScope's position) or covers any base band signals without regard to antecedent basis (Dali's position)

(2) whether "as appropriate" refers to the "the appropriate RF frequency band" (CommScope's position) or means the translation step is a conditional step that can optionally not be performed (Dali's position).

The Court should resolve both questions in CommScope's favor, but either one is sufficient.

### A.   Dali is not following the rule that terms should be interpreted in context

Dali's brief (pages 3-6) focuses on the term "as appropriate" in isolation.  Dali treats the translating step as unrelated to the other claim terms.  CommScope reads the terms together:

| |
|---|
| 1.  A method for routing and switching *RF* signals comprising:<br>[…]<br>translating the uplink and downlink signals between *RF* and *base band* as appropriate; packetizing *the* uplink and downlink *base band* signals… |

> […]
>
> routing and switching the packetized signals …

Ex. 1 at Claim 1. Claims must be interpreted in their context. By using the definite article "the" before "base band signals," the claim identifies that the packetizing step relates to the prior translating step. There is only one possible recited translation that could generate base band signals: translating a downlink signal from RF to baseband. That is not "rewriting" the step. The ordinary meaning of translating "between" RF and baseband is from one to the other, i.e., from RF to baseband. Ex. 63. Dali suggests the translating step also covers the reverse (baseband-to-RF). Dali Br. at 3. But that does not match the surrounding claim language. That translation would produce RF signals, not "the" baseband signal needed for the packetizing step. CommScope also gives meaning to the preamble. Dali never mentions the preamble.

Dali suggests there are several possible translations of downlink signals. *Id.* at 4. That is not the issue. ████████████████████████████████████

████████████████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████ Dali also suggests CommScope is trying to limit the claim as to "which unit" performs the translations (DAU vs. RRU). Dali Br. at 6. That is not CommScope's argument. CommScope's argument is that the action of translating a downlink signal from RF to baseband must occur. References to the DAU in CommScope's brief responds to Dali's expert who mapped the translating and packetizing steps for downlink signals to the accused DAU (the baseband controller). Paragraph 107 above shows this. To be clear, it is undisputed that the ██████████████████████████████████

██████████████████████████████████

**B.    Dali has no answer to antecedent basis for "the" base band signals**

Nowhere in pages 6-8 of its brief does Dali dispute the only possible antecedent basis in

the claim language for "the" base band signals is base band signals produced by the prior translating step. Dali's expert admitted there is no other candidate. Ex. 3 at 108:14-22. Dali says "the" base band signals to "simply refer to signals in the baseband format" based on the specification, i.e., there is no antecedent basis. Dali Br. at 7. To summarize the positions:

| CommScope | Dali |
|---|---|
| "the" base band signals refer to the base band signals produced by the prior translating step | "the" base band refer to any signals in the baseband format; there is no antecedent basis |

*First*, Dali's position writes "the" out of the claim. Every claim term – including "the" – is presumed to have meaning. If the claim "simply" covered packetizing any signal in base band format, the claim would have said packetizing "a" baseband signal.

*Second*, the specification does not support Dali's interpretation. Dali cites its expert for this conclusion, not the specification. Dali Br. at 7. But contrary to Dali's assertion, Dali's expert admitted at deposition that the specification teaches the baseband signals are *all* first translated from RF to baseband, which matches the antecedent basis found in the claim and shows the translating and packetizing steps are related. To unpack this, the parties agree Figure 1 is instructive on this issue (both parties cite Figure 1). The specification teaches that Figure 1 "can be used to explain" how the system operates for downlink signals. Ex. 1 at 5:56-60. With reference to Figure 1, Dali's expert admitted the patent teaches *all* of *"the baseband signals"* were "first translated from RF to baseband":

> Q. So in that embodiment all of the downlink baseband signals were first translated from RF to baseband in order to generate the downlink baseband signals, correct?
>
> A. I would say the way these columns, 5 and 6, describe an embodiment that incorporates Figure 1, in that limiting embodiment, *all of the baseband signals in the downlink direction were first translated from RF to baseband*.

Ex. 61 at 88:1-11 (emphasis added). He confirmed there is "no downlink baseband signal" that was not first translated from RF to baseband:

Q. And in that embodiment there is no downlink baseband signal that was not translated from RF to baseband, correct?

A. In the description in columns 5 and 6, that is the case, yes.

Ex. 61 at 87:10-14. CommScope then asked Dali's expert whether there was "any" teaching in specification of a downlink baseband signal that was not first translated from RF to baseband. Ex. 61 at 97:18-98:6. Dali's expert could not identify any teaching. *Id.* He merely noted the legalese saying the invention is not limited to preferred embodiments. *Id*. The fact that "all" the base band signals were first translated from RF to baseband shows that the specification confirms that the antecedent basis for "the" baseband signals is the translation step. *Id.* at 99:1-9.

*Third*, Dali gives no reason why the translating step does not supply antecedent basis. Dali argues that antecedent basis can be present by implication from the specification when it is missing, but this assumes antecedent basis is missing without explaining why the translating step fails to provide antecedent basis. Dali raises two irrelevant quibbles. Dali says the packetizing step does not recite "the *translated*" base band signals. Dali Br. at 7. But Dali does not deny the use of the definite article "the" by itself signals antecedent basis. Dali says there is no "express" recitation of "base band *signals*" in the translating step. *Id.* CommScope's opening brief cited case law explaining the antecedent basis does not need to use the exact same phrase, and Dali did not disagree. Opening Br. at 3. Furthermore, the "signals" part follows from the plain language. of translating "downlink *signals* between RF and *base band*." The term "between" means "from one to another of," i.e., from downlink RF signals to downlink base band signals. Ex. 63 at 109. Dali did not dispute the important point: translating downlink signals from RF to base band produces downlink base band signals, i.e., the precise antecedent basis we are looking for.

*Fourth*, the case law does not support Dali. Dali's task was to find a case where the Federal Circuit disregarded a logical option for antecedent basis in the claim and treated the definite article

"the" the same as saying "a." Dali cited no such law. None of Dali's cases hold the Court should ignore an interpretation that preserves the antecedent basis called for in the claim. On the other hand, numerous cases adopt constructions that follow antecedent basis and reject those that do not. *Compare Wi-LAN, Inc. v. Apple Inc.*, 811 F.3d 455, 462 (Fed. Cir. 2016) ("The term '*the* modulated data symbols' therefore refers back to the randomized data symbols produced by the computing means in the second claim element.") (emphasis original) *with Hytera Communs. Co. v. Motorola Sols., Inc.*, 840 F. App'x 555, 559 (Fed. Cir. 2021) (rejecting proffered construction for not following antecedent basis)

### C.    The translating step is not merely a conditional limitation

#### 1.    The intrinsic record does not support Dali's construction

It is "highly disfavored" to construe terms in a way that makes them "optional." *Wasica Fin. GmbH v. Cont'l Auto. Sys.*, 853 F.3d 1272, 1288 n.10 (Fed. Cir. 2017) ("Construing 'bit sequence' to allow for an empty, zero-bit sequence would effectively remove the 'first bit sequence,' … as it would make them optional or potentially nonexistent. It is highly disfavored to construe terms in a way that renders them void, meaningless, or superfluous.") Thus, Dali needed to provide clear intrinsic support for its construction that allows the step to be optionally not performed. Dali's brief (pages 8-12) provides minimal support. Dali instead say the Court's construction of "downlink signal" is "dispositive." Dali Br. at 9. Nothing in the Court's order says the translating step is a conditional limitation. D.I. 122.

*First*, the claim language does not support Dali. The claim does not say translating "*if* appropriate." It says "as appropriate." CommScope explained the ordinary meaning of "as" relates to the "degree or amount." Opening Br. at 10. Thus, translating "as appropriate" refers to translating to the appropriate amount or degree. This matches the specification (discussed below) where appropriate is used to refer to "the appropriate RF frequency band." Dali never engages

5

with the operative word "as." Dali argues a lay dictionary definition says appropriate means "suited for some purpose or situation." Dali Br. at 29. As shown below, the applicable "purpose" identified in the specification is translating the uplink signal to the "appropriate RF frequency band," not whether translating the downlink signal is conditional.

*Second*, the specification does not support Dali. The specification never says the translating step is conditional, optional, or only performed when needed. Rather, the relevant teaching in the specification is that the uplink and downlink signals "are" converted and that "as appropriate" refers to "the appropriate RF frequency band":

> For the downlink (DL) path, RF signals received from the BTS *are* separately down-converted, digitized, and *converted to baseband* (using a Digital Down-Converter). . . .
>
> For the uplink (UL) path optical signals received from RRUs *are* de-serialized, deframed, and *up-converted* digitally using a Digital Up-Converter. Data streams are then independently converted to the analog domain and *up-converted to the appropriate RF frequency band*.

Ex. 1 at 5:64-6:9 (emphasis added). The term "appropriate" is only used here to describe the "appropriate RF frequency band" for the uplink signal. There is no optional language in this teaching. In the "Summary of the Invention," the specification explains that the conversion process is an "object of the present invention," not merely a conditional step. Ex. 1 at 4:20-22.

Dali's own expert refuted all of Dali's evidence. (1) Dali cites this statement: "DAUs then reroute the users to Internet VoIP, Wi-Fi or WiMAX as appropriate." Dali Br. at 10. This statement is about rerouting, not translating. Dali's expert agreed this statement was "unrelated" to the context of the claim. Ex. 8 ¶19 ("Also, this instance is in the context of re-routing local traffic to Internet VoIP, Wi-Fi, or WiMAX ('338 Patent at 4:56-67), which is unrelated to transporting packetized downlink signals to multiple RRUs as recited in the claim."). (2) Dali cites Figure 1. But, as quoted above, Dali's expert testified "all" of "the" base band signals in

6

Figure 1 were "first translated from RF to base band," which means the step was not conditional.

*Third*, Dali's construction conflicts with the other claim language. It eliminates antecedent basis for the packetizing step.

### 2. The intrinsic record supports CommScope's construction

Dali says CommScope is ignoring "as appropriate." Dali Br. at 29-31. Not true. On page 32 of CommScope's opening brief, CommScope explained it agrees with Dali's original construction, i.e., "as appropriate" refers to the "the appropriate RF frequency band."

| Term | Dali's original construction |
|------|------------------------------|
| translating the uplink and downlink signals between RF and base band *as appropriate* | Down-converting RF downlink signals to baseband downlink signals and up-converting baseband uplink signals to the *appropriate RF frequency band* |

Joint Claim Construction Chart, D.I. 67 at 3 (emphasis added). This construction (a) gives meaning to "as appropriate" and (b) preserves antecedent basis. There is no dispute that Dali's original construction of "as appropriate" is dispositive against Dali. Dali's RSOF ¶2. Dali never explains why its original construction was wrong. This is a major hole in Dali's argument. The Court may prefer not to unnecessarily construe the translating step (the issue of antecedent basis resolves infringement). If the Court construes the step, Dali's original construction is correct.

Dali's original construction is consistent with the specification and surrounding claim language. It matches the teachings quoted on page 6. Dali itself perceived this match, which is why it proposed the construction. It also matches the antecedent basis in the packetizing step.

Importantly, Dali's original construction is consistent with the technology context. CommScope partially explained this context in CommScope's opposition brief to Dali's cross-motion. D.I. 270 at 5-6. As a more complete explanation, each downlink or uplink signal can correspond to a "respective RF frequency band." Ex. 1 at Claim 2. Frequency bands are separated across the radio frequency spectrum like radio stations. "Base band" refers to the zero frequency.

Ex. 64 ¶84; Ex. 65 at 88:6-25.  In the downlink, signals are down-converted to base band (zero

frequency) for transport like this:



As shown by the arrows, the amount of translation needed to reach "base band" varies, but the

final result is the same (they all end up at base band).  Note this is consistent with CommScope's

point that "*as* appropriate" relates to the degree of translation.  On the uplink, the reverse occurs:

uplink signals are up-converted back from base band to the appropriate RF frequency:



Again, the amount or degree of translation varies, but now the final result depends on the respective

band.  This is why the specification teaches the uplinks signals must be "up-converted to the

appropriate RF frequency band."  Ex. 1 at 6:7-9.

Dali raises several objections to specifying downlink signals are first translated from RF to

baseband.  None have merit.  (1) Dali suggests CommScope is reading "RF" into the claims.  Dali

Br. at 9.  Both the translating step and the preamble state "RF."  (2) Dali suggests CommScope is

limiting Dali to one embodiment.  *Id.*  at 31-32.  No other embodiment is disclosed.  Page 24 of

CommScope opposition brief (D.I. 270) to Dali's cross-motion shows Dali's expert was unable to

identify any other embodiment.  (3) Dali says Figure 1 teaches a DAU can receive a base band

signal from another DAU.  Dali's expert admitted these signals were "first translated from RF to

baseband."  Ex. 61 at 238:22-239:2.  Pages 18-21 of CommScope opposition brief (D.I. 270) to Dali's cross-motion illustrates this point.  If any doubt remains, the law prefers the narrower construction.  *Halliburton Energy Servs. v. M-I LLC*, 514 F.3d 1244, 1253 (Fed. Cir. 2008) ("where a claim is ambiguous as to its scope we have adopted a narrowing construction when doing so would still serve the notice function of the claims.")

### D.    Dali's conditional interpretation does not avoid summary judgment

Even under Dali's "conditional" interpretation, Dali fails to establish infringement.  When claims include a conditional limitation, the patentee must establish for infringement that the accused system is *capable of* performing the conditional step.  *Interdigital Tech. Corp. v. Lenovo Holding Co.*, No. 19-1590-LPS, , 2021 WL 1856937, at *6 (D. Del. May 10, 2021); *Lincoln Nat'l Life Ins. Co. v. Transamerica Life Ins. Co.*, 609 F.3d 1364 (Fed. Cir. 2010).  It is not sufficient to show that in the accused system the condition is never satisfied and, therefore, unnecessary.  *Lincoln*, 609 F.3d at 1368-69.  Dali cites no evidence that the OneCell system is anywhere *capable of* translating downlink RF signals to baseband.

Dali suggests we look at the capabilities of the remote units.  This argument is flawed for multiple reasons.  First, there is no evidence that the remote units perform this step, and Dali cites none.  Dali's expert when addressing the claimed translation of downlink signals pointed to the signals "at the Baseband controller", not the signals at the alleged remote units.  Ex. 7 ¶107.

Second, the claims do limit the order in which the translation step must occur.  It must occur *before* the steps of packetizing those baseband signals and routing and switching those packetized baseband signals via the DAU.  Dali's suggestion to look at the remotes does not fit the recited order of steps because it occurs after the signals have already been packetized, routed and switched.  Further, the wireless analog RF signal broadcast from an antenna to a mobile phone is not a packetized signal nor is it being routed and switched via the DAU.  Finally, a baseband-to-

RF translation at the remote unit would not produce the baseband signal as required by the subsequent packetizing step (i.e., it fails to address the antecedent basis issue).

## II.    CommScope does not practice the "routing and switching" step

To survive summary judgment, Dali needs to show both that (1) the routing and switching step only applies to one direction (downlink) even though the antecedent basis refers to both directions (uplink and downlink) and (2) "switching … via the at least one digital access unit" does not require the digital access unit perform any switching.

### A.    The antecedent basis requirement in the step

███████████████████████████████████████████████

████████████████████████  CommScope's defense is that the antecedent basis for this step involves both uplink and downlink signals; thus, CommScope does not infringe.  Dali did not dispute the antecedent basis for this step involves uplink and downlinks signals:

> *packetizing* the *uplink and downlink base band* signals, wherein the packetized signals . . . routing and switching *the packetized signals* among the one or more remote radio units …

Ex. 1 at Claim 1.  Dali's expert agreed the antecedent basis for "the" packetized signals is the prior packetizing step.  Ex. 3 at 106:4-10, 107:21-108:2.  Dali argues that "other" language in the step ("…among the one or more remote radio units") means the step only applies to the downlink "direction."  Dali Br. 12-14.  Dali says only downlink signals can be routed "to" the RRUs.

*First*, the claim says "among", not "to" the RRUs.  Ex. 1 at Claim 1.  Nothing in the plain language "among" states a particular direction.   The term "among" is broader than "to." Ex. 59; Ex. 60.

*Second*, the specification does not support limiting the routing and switching step to one direction.   Dali notes the specification teaches downlink signals can be routed and switched from the DAU to the RRUs.  The specification also teaches routing in the opposite direction for uplink

signals (from the RRUs to the DAU).  Ex. 1 at 9:27-29 ("Referring to FIG. 2…signals resulting from processing performed within each of the four RRU are routed to the two DAUs.").   The specification includes figures showing both the downlink (Figure 1) and uplink (Figure 2) directions.  Dali's expert conceded Figure 2 teaches routing and switching of uplink signals.  Ex. 62 at 173:13-176:24.  Dali response is that Figure 2 does not show routing and switching uplink signal "from the RRUs back to the RRUs."  But the claim does not say that.

*Third*, Dali's argument is inconsistent with numerous rules of claim construction. (1) The routing and switching step must be interpreted in the context of the surrounding steps.  None of the other steps are limited to the downlink direction, and the antecedent basis for this step expressly requires both directions.  (2) The routing and switching step must be interpreted with an eye toward giving meaning to every part of the claim.  Dali's narrow interpretation of "among" gives no meaning to the antecedent basis identified in this step ("*the* packetized signals" which the packetizing step identifies as *both* uplink and downlink signals).  In contrast, interpreting "among" to cover routing and switching to and from the remotes gives meaning to the antecedent basis issue. (3) The routing and switching step should not be interpreted to exclude an embodiment.  Dali excludes the uplink embodiment in Figure 2.   (4) The routing and switching step must be interpreted with common sense.  If the patentee intended to limit this step to downlink signals, common sense says the step would say "routing and switching the packetized [downlink] signals." It does not say that.

### B.    The "switching…via the at least one digital access unit" requirement

█████████████████████████████

████████████████████   CommScope's defense is that proper construction requires the accused DAU at least perform *some* of the switching.  Here are the parties' proposals for "switching … via the at least one digital access unit":

| CommScope | Dali |
|-----------|------|
| The at least one digital access unit performs [at least some] switching | switching … [through the agency of/by means of] the at least one digital access unit." |

The Court previously instructed the parties to focus on the intrinsic record. Dali did not dispute the most relevant point from the intrinsic record: the specification teaches the DAU performs the switching. CommScope devoted substantial space to this point (pages 17-18, 21-22), and Dali provided no response. Dali did not provide any analysis of the cited figures or teaching. Dali is contending there is support in the patent for a system where *none* of the switching is performed by the DAU. Dali Br. at 17. But Dali identified no such support.

Dali's two arguments have no merit. Daly says CommScope (1) "deletes" via from the claim and (2) "rewrites" the step because routing and switching are not two separate functions.

CommScope did not say "via" has no meaning. Dali argues that "via" is a preposition that express a relationship between "routing and switching" and "the at least one digital access unit." *Id.* at 15. CommScope agrees, and CommScope's point is that the relationship expressed is that the digital access unit is the agency that performs switching, which is confirmed by the intrinsic record. Dali never identifies some other relationship taught in the intrinsic record.

Dali makes two sub-points. First, Dali says that dictionary definition of "via" is not "performed by." Dali Br. at 16. Dali cites the definition that "via" means "through the agency of / by means of." *Id.* at 15. But the conclusion that the DAU performs the switching is consistent with this construction. The DAU is the "means" or the "agent" because it is doing the switching. Second, Dali asks the Court to consider several colloquial examples of "via." The Court already noted during Markman that those examples "aren't helpful" and told the parties to focus on the intrinsic record. D.I. 121 at 56:9-11.

The lack of analysis of the intrinsic record in Dali's brief is conspicuous, especially because

the Court told the parties to focus on this at claim construction. Dali provides one string citation to the specification on page 16 with no accompanying analysis. None of the passage cited have anything to do with routing and switching. Dali's task was to find a teaching in the intrinsic record that the DAU does not perform any of the switching. Dali failed to do so. Nor do the string citations even support Dali's theory. For example, at 4:31-33 the specification states "…noise reduction via frequency-selective filtering at the Remote Radio Head is utilized…" This is consistent with CommScope's interpretation of "via," not Dali's. It is the frequency selective filtering that is performing or producing the noise reduction. "Via" here does not mean merely passing through. Similarly the quote at 9:39-40 which states "Because each RRU is already controlled and monitored via the DAUs…" supports CommScope's construction of via, because it is the DAU that controls and monitors the RRUs. See 11:25-35 (DAU "Monitoring module" and "Control module" for controlling and monitoring the RRUs).

Dali's second argument is irrelevant. CommScope's argument does not depend on whether "routing and switching" is two independent functions or one related function. Either way, the claimed function needs to *include* some switching. No construction of "routing *and* switching" could omit switching. CommScope's summary judgment is based on the fact that the accused DAU ████████████████████

### C.    Dali's DOE theory is either moot or fails as a matter of law

The issues for Dali's DOE theory (for the "via" requirement) are: (1) prosecution history estoppel and (2) the disclosure dedication. Dali does not dispute these are legal questions.

### 1.    Prosecution history estoppel bars DOE

It is undisputed Dali amended the claim during prosecution to add "via." Thus, the law presumes prosecution history estoppel bars equivalents unless the Dali proves an exception applies. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 740-41 (2002).

Dali argues the amendment was not narrowing, but rather cosmetic. This fails for two reasons. First, Dali points to nothing in the intrinsic record to substantiate that the amendment was cosmetic. When the patentee is unable to explain the reason for the amendment, estoppel applies. *Festo Corp.*, 535 U.S. at 740. Second, Dali's expert contradicts Dali's claim that the amendment was not narrowing. Dali's expert agreed that *prior* to the amendment the original claim more broadly covered routing and switching via different options (DAU, RRU, intermediary, etc.). Bims Depo. at 221:21-222:20. The amendment narrowed this coverage one option (via the DAU).

Dali argues the amendment was not made in response to a prior art rejection. Dali cites the wrong amendment. Dali cited the Preliminary Amendment dated May 28, 2013 (Ex. 2 at DSC2-00000149-152), which was never entered or examined by the examiner.[1] After this un-entered amendment, the Applicant submitted a different amendment – that inserted "via" – dated August 29, 2013. This amendment was made "in response to the Office Action" from the Examiner that rejected the claims based on the Kilfoyle prior art reference. Ex. 2 at DSC2-00000195-201; DSC2-00000196 (inserting "via"). Dali says it amended multiple elements, but that is irrelevant. *Felix v. Am. Honda Motor Co.*, 562 F.3d 1167, 1184 (Fed. Cir. 2009) ("It is immaterial that Felix chose to add both the channel and the gasket limitations, rather than just one. The resulting estoppel attaches to each added limitation.") To be clear, the Applicant expressly included the "via" requirements in the lists of amendments that distinguished the "Kilfoyle does not disclose":

---

[1] It was filed too late to be entered or considered before the examiner's office action that was mailed two days later. Ex. 2 at DSC2-00000156-161, 00000157 (May 30, 2013 Office Action rejecting claims as originally filed Aug. 16, 2011). That the May 28, 2013 Preliminary amendment was never entered is evident not only from the Examiner's office action which addresses only the claims as originally filed, but also by the fact that when the applicant filed its next amendment that was actually timely, dated Aug. 29, 2013, Applicant chose not to make some of the amendments it had attempted in May. Compare Ex. 2 DCS2-00000150 (amendments to translating step) to Ex. 2. DCS2-00000196 (different translating step).

> Claim 1 has been amended to recite, in part, "configuring each remote radio unit to receive or transmit a respective subset of the plurality of carriers, each respective subset of the plurality of carriers including a number of carriers; reconfiguring each remote radio unit by: determining a load percentage of each remote radio unit; and increasing or decreasing the number of carriers in the respective subset of the plurality of carriers based on the load percentage; and routing and switching the packetized signals among the one or more remote radio units via the at least one digital access unit according to a result of the reconfiguring."
>
> Applicants respectfully submit that Kilfoyle does not disclose or suggest at least the above-recited elements of amended claim 1.

Ex. 2 at DCS2-00000199 (highlighting added).  At bottom, Dali bore the burden to prove an exception, and Dali did not carry its burden.

### 2.    The disclosure-dedication rule bars DOE

Dali's DOE theory is that the combination of a DAU and Ethernet switches meets the routing and switching step.  Ex. 8 ¶157.  The disclosure-dedication rule arises because Dali disclosed this combination in the background of the patent's specification, but never claimed it. The summary judgment issue is whether the statement in the background of the specification is sufficiently specific.  The statement at issue discloses an alternative prior art approach: "The second type of DAS is equipped with a type of *network switch* which allows the location and quantity of DAS remote units associated with any particular centralized base station to be changed manually."  Ex. 1 at 2:11-18 (emphasis added).  The test for whether a statement is sufficiently specific is: "if one of ordinary skill in the art can understand the unclaimed disclosed teaching upon reading the written description, the alternative matter disclosed has been dedicated to the public."  *PSC Comput. Prods., Inc. v. Foxconn Int'l*, 355 F.3d 1353, 1360 (Fed. Cir. 2004).  This comes from a Federal Circuit case that held a statement about prior art approaches in the background of the specification did trigger the disclosure-decision rule.

Dali's statement is sufficiently specific.  Dali's expert testified that a POSA would understand it to disclose the possibility that a DAU can be combined with an "Ethernet switch."

Ex. 3 at 211:21-212:4 ("A. So as described in the '338 patent, a distributed antenna system can include a network switch… So *a person of ordinary skill* reading the '338 patent would already understand that an *Ethernet switch may or may not be integrated with the DAU*.").[2]

Dali disputes whether this statement identified the network switch as an alternative to the claim element (routing and switching). Dali's expert testified that the discussion of network switches relates to the routing and switching step.[3] Further, what other aspect of the invention would a "switch" relate to other than the "routing and switching"? There is an additional fact the strongly supports CommScope. Dali has since claimed the combination at issue for DOE (a baseband controller and Ethernet switch) in a continuation patent. Ex. 66 at Claims 1-2. The Federal Circuit has held that when a continuation patent later claims the alleged equivalent that reinforces that the earlier patent's failure to claim it was a dedication to the public. *CSP Techs., Inc. v. Sud-Chemie AG*, 643 F. App'x 953, 958 (Fed. Cir. 2016).

### D.    CommScope's alternative motion to strike

Nowhere does Dali deny its expert is relying on two new claim constructions: (1) the phrase "routing and switching" merely means "transporting" (Ex. 7 ¶151) and (2) the routing and switching step only applies in one direction (the downlink) (Ex. 8 ¶21). Nowhere does Dali deny it failed to disclose these constructions during claim construction. Dali feigns that its expert is merely "applying the plain and ordinary meaning." Not true. Dali's first construction (routing and switching = "transporting") removes the entire ordinary meaning of switching. CommScope

---

[2] Ex. 3 at 213:17-23 ("A. So as mentioned before, in the background to the invention the '338 patent discloses that a person of ordinary skill would understand that a distributed antenna system could include a network switch, so *a person of ordinary skill* would understand that a distributed antenna access unit can *include* an *Ethernet switch*."); *see also* 198:5-12; 198:18-25.

[3] Ex. 3 at 197:18-25 ("…the '338 patent in column 8, for example, mentions the *method for routing and switching* between the DAU and the RRU. And it also, column 2, describes a *network switch* being what a DAS is a type of. And a network switch would include within it an *Ethernet switch* that is used for communication between the DAU and the RRU.")

has shown the ordinary meaning of "switching" involves changing between multiple options, which is nowhere present in merely "transporting."  Opening Br. at 21-22, 24-25, n.2

## III.    The Court should grant summary judgment of no willfulness

Dali agrees that willfulness requires facts showing *both* (1) knowledge of the patent and (2) knowledge of infringement.  Dali Br. at 26.  Dali says there is a genuine dispute over whether CommScope had knowledge of the patents.  That is a red herring.  CommScope's motion is about knowledge of infringement, not knowledge of the patent.

### A.    Dali did not identify any disputed fact on the actual issue of knowledge of infringement and merely argues an "inference"

On knowledge of infringement, Dali did not identify any disputed material fact.  Dali agreed CommScope's statement of facts for willfulness are all "undisputed."  Dali's RSOF ¶¶12-20.  CommScope's prior brief showed the pre-suit interactions between the parties are irrelevant to knowledge of infringement (none of them involved the accused product or the asserted patent).  Dali did not dispute this.   Dali's RSOF ¶¶13-17 ("Undisputed").  Dali's only response is that the Court could "infer" knowledge of infringement from a prior litigation.  Dali Br. at 26-27.  Dali, however, admits this prior litigation did not involve the accused product or the asserted patent.  Dali's RSOF ¶17.  The Court should reject Dali's "inference" for three reasons.

*First*, Dali had no response to the logical flaw pointed out by CommScope.  Dali says the Court can infer CommScope knew the OneCell infringes the '338 patent because the OneCell product is similar to CommScope's ION-E product.  But Dali does not even contend the ION-E infringes the '338 patent.  Dali Br. at 27.   Dali's RSOF ¶19 ("Undisputed").  Thus, the inference immediately breaks down.  CommScope pointed out that any similarity to a product *not* accused of infringing the '338 patent suggests there is *no* infringement.  CommScope Op. Br. at 31.  Dali had no relevant response to this point.

17

*Second*, Dali admitted the key part of this inference has no factual support. Dali's inference depends on the allegation that the OneCell is similar to the ION-E. But Dali admitted it provided no factual support that the OneCell product is similar to the ION-E product. Dali's RSOF ¶20 ("Undisputed").

*Third*, Dali could not find any supporting case law. None of Dali's cases says a prior litigation provides an inference that a different product infringes a different patent. Further, Dali's case law is all about the pleading stage for willfulness, not summary judgment. Dali needed to do better than unsupported, illogical inferences at the summary judgment stage.

### B.     The Court should reject Dali's argument about post-suit willfulness

Dali argues there is a dispute about *post*-suit willfulness because: (1) CommScope continues to sell its product, (2) CommScope has not re-designed, and (3) CommScope (supposedly) relies on a defense that was "foreclosed" by the Court's Markman order.

First, this is an untimely new theory. Dali's interrogatory answer nowhere alleges post-suit willfulness. Ex. 21 at 8-10. Second, cases from this District hold the first two reasons are insufficient and warrant summary judgment. *Nexstep, Inc. v. Comcast Cable Communs.*, Civil Action No. 19-1031-RGA-SRF, 2021 WL 4077778, at *12-14 (D. Del. Aug. 20, 2021) (report and recommendation); *Intellectual Ventures I, LLC v. Symantec Corp.*, 234 F. Supp. 3d 601, 612 (D. Del. 2017). Dali's third reason is false. The Court never addressed CommScope's argument about antecedent basis or held the translating step is optional. *See* D.I. 122.

### C.     Dali has no meaningful response to CommScope's second argument

CommScope identified a second issue to which Dali provides minimal response. Specifically, Dali *agreed* to the premise of CommScope's non-infringement defense on the record, which undermines any claim CommScope is "deliberately" infringing during this suit. Dali agreed CommScope's summary of the record is accurate, specifically:

- "CommScope contends it does not infringe because, inter alia, the claim requires translating a downlink RF signal to baseband, which CommScope does not do."
- "Dali stated on the record during claim construction that *the proper claim construction does require* translating a downlink RF signal to base band."
- "Dali never told CommScope any of these statements were errors."

*Compare* SOF ¶¶21-22, *with* Dali's RSOF ¶¶21-22. Dali says CommScope cannot rely on a position that Dali "later dropped." Dali Br. at 28. Dali's response does not deny that *before* Dali dropped its position, the case record established non-infringement, which negates willfulness. Further, CommScope's argument is not about whether it can still rely on Dali's position. CommScope's point is that CommScope does not suddenly become a willful infringer when Dali changes positions midstream. Dali agreed the relevant points are undisputed. SOF ¶22 ("Regarding post-suit willfulness … Dali never told CommScope any of these statements were errors); Dali's RSOF ¶22 ("Undisputed"); SOF ¶23 ("Regarding pre-suit willfulness, Dali has not identified any facts suggesting Dali ever notified CommScope (or CommScope somehow anticipated) of Dali's current infringement theory"); Dali's RSOF ¶¶23 ("Undisputed"). That Dali itself on the record adopted a reading of the claim that would result in non-infringement demonstrates that CommScope's non-infringement position is in good faith and reasonable.

## IV.  Claims 1-3 are invalid

### A.  Dali's interpretation of "as appropriate" renders the claims indefinite

Dali did not respond to CommScope's main point which is that Dali's construction creates an inconsistency in the claim. The Federal Circuit has repeatedly held claims are indefinite if they contain an inconsistency or contradiction.[4] Dali's construction allows the translating step to be

---

[4] *Competitive Techs., Inc. v. Fujitsu Ltd.*, 185 F. App'x 958, 965-66 (Fed. Cir. 2006) (affirming indefiniteness because two parts of the claims were "internally inconsistent"); *Trs. of Columbia Univ. v. Symantec Corp.*, 811 F.3d 1359, 1367 (Fed. Cir. 2016) (affirming indefiniteness where

optionally read out of the claim, but this is inconsistent with the very nature of reciting the step in the first place. *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006) ("The purpose of a patent claim is to define the precise scope …Allowing a patentee to argue that physical structures and characteristics specifically described in a claim are merely superfluous would render the scope of the patent ambiguous."). The purpose of reciting a step is to specify which steps limit and define the scope of the invention. But Dali's construction means the translating step does not actually limit or define the invention. This is inconsistent with the nature of reciting the step in the first place. It is also inconsistent with the preamble. The preamble does not say the claimed method "may comprise" the recited steps. It says the method comprises the steps. Dali's conclusion is also inconsistent with the plain language of the translating step. The translating step does not introduce the option of not translating. It does not say "translating or not translating…as appropriate." *See* Ex. 1 at Claim 1.

Dali's construction creates another inconsistency. The translating step ties together multiple pieces of the claim. It starts the chain of antecedent basis for three related steps (translating, packetizing, and routing and switching). Dali acknowledges its construction breaks the chain of antecedent basis and means there is no antecedent basis for the packetizing step even though it uses the definite article "the." The translating step also ties together the start of the claim (the preamble) and end of the claim (the routing and switching step). The preamble specifies this is "A method of routing and switching RF signals," which indicates the recited routing and switching should relate back to RF signals. Ex. 1 at Claim 1. This only true to the extent the translating step is performed. Without performing the translation from RF to baseband, the routing

---

there was an internal contradiction); *TVnGO Ltd. (BVI) v. LG Elecs. Inc.*, 861 F. App'x 453 (Fed. Cir. 2021) (affirming indefiniteness due to "the intra-patent inconsistency").

and switching step does not relate back to any RF signal.  Dali's argument about Figure 1's multiple DAU embodiment has no merit.  Pages 18-21 of CommScope's responsive brief (D.I. 270) thoroughly rebut this argument.  Dali's expert admitted the step of translating the downlink signal from RF to baseband is performed for every downlink baseband signal in the multiple DAU embodiment.  *Id.*

### B. Derivation

Dali has tried to walk back its own admissions by asserting it only admits its inventors derived the invention under some unstated definition of "derived," not as that term is used with respect to patent invalidity.  This is exactly the kind of word games that the law says cannot be relied upon to create a factual dispute to avoid summary judgment.  *Kenexa Brassring, Inc. v. Taleo Corp.*, 751 F. Supp. 2d 735, 747 (D. Del. 2010).  The issue boils down to whether Dali is held to its own admissions.  There is no credible reason to believe Dali did not know (or should have known) the interrogatory was addressing derivation for invalidity.

## V. Dali fails to show Donohue's damages methodology is reliable

Dali was required to show that Mr. Donohue's opinions are reliable.  *See Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987).  Dali failed to meet that burden.

### A. Donohue's method of allocating 100% of the cost savings of OneCell to the asserted patent is methodologically flawed and fundamentally unsound

Tucked into Dali's response, and Donohue's reply report itself, is an admission that resolves this issue in CommScope's favor.  Donohue has identified a "minimum cost savings" that he opines OneCell offers over its competitors—and he allocates 100% of it to the '338 patent. (D.I. 265 at 44 ███████████████████████████████████████

████████████████████████     ████████████████████████████████

███████████  Dali tries to mute this fact by arguing that it is theoretically possible that additional cost

savings could be realized by the OneCell product.  (*See id.*)  But that does nothing to change that Donohue chose to anchor his opinion in the premise that ███████████████████████████████ ████████████████████████████████████████████████████████ ███████████████████████  This is the flaw that the court in *Contour IP Holding, LLC v. GoPro, Inc.* and *Looksmart Grp., Inc. v. Microsoft Corp.* identified in excluding the cost approach in those cases.  No. 3:17-cv-04738-WHO, 2020 WL 5106845, at *13-14 (N.D. Cal. Aug. 31, 2020); No. 17-cv-04709-JST, 2019 WL 4009263, at *2-4 (N.D. Cal. Aug. 5, 2019).  It is all the more unreasonable and unreliable to assert, as Donohue does, that if CommScope were only to realize the low end of the cost savings it projected, that it would hand all of it to Dali in a hypothetical negotiation.  As "the maker, designer, marketer, seller, and undisputed market leader," CommScope "would not have left a hypothetical negotiation with zero profits derived from the infringing technology."  *Contour IP Holding*, 2020 WL 5106845, at *14.

Dali's infringement expert, Dr. Harry Bims, unequivocally testified that "the accused functionality of OneCell is ***an excerpt of*** the totality of the Smart Reuse function in the source code."  (D.I. 247 at 40.)  But the unsoundness of Donohue's cost methodology would not be cured even if the '338 patent somehow covered all of SmartReuse (it does not).  Even Donohue does not dispute that SmartReuse is one of many features of OneCell.  (D.I. 247 at 42-43.)  Yet under Donohue's approach, CommScope would gain nothing from any other aspect of the greater OneCell product.  The flaw in Donohue's cost methodology therefore is equally unsound whether the '338 patent covers "an excerpt of" SmartReuse, as Dali's technical expert opines, or somehow extends to "the entirety of Cell Virtualization," as is Donohue's view.

Dali cites *Hanson v. Alpine Valley Ski* Area, 718 F.2d 1075, 1080-81 (Fed. Cir. 1983) for the proposition that "[r]eliance upon estimated cost savings from use of the infringing product is a

well settled method of determining a reasonable royalty." (D.I. 265 at 41). But *Hanson* only confirms that Donohue's attempt to use a patent—that at best covers part of a product—to take all of the cost savings of the entire product, is a fundamentally flawed and unreliable methodology for assessing a reasonable royalty. The Federal Circuit in *Hanson* upheld the royalty set by the trial court in part because the rate was ***based on one-third of the estimated cost savings, which still allowed defendant to make a profit***. *Id.* at 1081. By stark contrast, Donohue's ████████ ████████████████████████████████████████████████████████████ ████████████████████████ (D.I. 247 at 44.)

Importantly, Donohue's ██████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████ (Ex. 33 at ¶¶ 87, 98, 102, 103, 108, 150, 157-58, 170-172; Ex. 34 at ¶¶ 32-35.) Based on his own calculation of a ████████████, Donohue would apply an ████████████████████████████. This opinion exceeds the bounds of a reliable cost savings methodology and must be excluded. *Hanson*, 718 F.2d at 1081; *Contour IP Holding,* 2020 WL 5106845, at *13-14; *Looksmart Grp.*, 2019 WL 4009263, at *2-4.

**B.    Donohue's use of CommScope's ████ policy is completely unmoored from any accepted methodology**

Dali fails to provide a rational basis, much less authority, to support Donohue's use of CommScope's policy for licensing ████████████████ covering a range of products, in a negotiation where CommScope would license *in* a single patent on technology that had never been commercialized. Donohue does not merely mention CommScope's out-licensing policy in passing, it is foundational to his opinion. (D.I. 247 at 46 (citing paragraphs of Donohue report)).

Critically—and fatally for Donohue's methodology incorporating it—CommScope's

███ policy is just that:  a policy.  It is not a license, much less a comparable license.  ███

████████████████████████████████████████████ (Ex. 43 at 116:25-117:16).

Equally problematic for Donohue's opinion is that even the flexible framework of *Georgia-Pacific* does not provide a gateway to incorporate CommScope's licensing policy into the hypothetical negotiation.  *Georgia-Pacific* considers rates paid by the licensee, *i.e.*, **rates that CommScope has paid**, for comparable patents.  *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).  CommScope's ███ policy contemplates the reverse—rates others would pay to CommScope.

Even given the wide breadth of *Georgia-Pacific* factors 12 and 15, Dali has not come forward with any case where a court has considered the licensee's out-licensing policy.  This is not surprising because Donohue's method of applying CommScope's policy for out-licensing a vast portfolio in a complex market dynamic, to opine about an entirely opposite hypothetical negotiation where CommScope is in-licensing a single patent in an entirely different market dynamic, is so flawed that Dali cannot show it has ever been advanced, much less endorsed, by any legal or economic authority.  Moreover, Dali's attempt to contort *Georgia-Pacific* 12 and 15 to salvage Donohue's analysis fails on the face of those factors.  *Georgia-Pacific* 12 concerns "the portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions."  An out-licensing policy for a voluminous and entirely different portfolio that has never even resulted in a license is not, by any measure, "customary".  Donohue's opinion fares no better under *Georgia-Pacific* 15, "the amount that a prudent licensee . . . would have been willing to pay as a royalty and yet be able to make a reasonable profit, and which amount would have been acceptable by a prudent patent owner who was willing to grant a license."  As explained above, an ███

████████████████████████████████████████████████    ███████

█████ contemplated in CommScope's out-licensing policy would impose significant losses on CommScope. A "prudent licensee" does not negotiate itself into a deficit.

Donohue's flawed reliance on CommScope's ██████ policy is central to his opinion. (D.I. 247 at 46.) This is therefore yet another reason why his opinion must be excluded from this case.

## C.    Donohue's reliance on the Kathrein license is methodologically unsound

In the Kathrein license, CommScope licensed out its ██████████████, and licensed in key patents from Kathrein. The complexities of that license, the market dynamics that drove it, and the unique intellectual property that was cross-licensed between those parties, set it far apart from any hypothetical negotiation for the '338 patent here. (D.I. 247 at 48.) Comparing a single patent with a patent portfolio introduces myriad factors implicating whether true economic comparability exists. *See M2M Solutions LLC v. Motorola Solutions, Inc.*, No. 12-33-RGA, 2016 WL 767900, at *8-9 (D. Del. Feb. 25, 2016). Comparisons between "vastly different" licensing agreements are insupportable for sound royalty awards. *Lucent Techs, Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009) (emphasizing licensor's greater market power and portfolio size from prior license negotiation distinguished the IBM-Dell license); *DataQuill Ltd. v. High Tech Computer Corp.*, 887 F. Supp. 2d 999, 1023 (S.D. Cal. 2011) (excluding a portion of the damages expert's opinion because it relied on a worldwide Motorola license "for hundreds of patents covering a broad range of inventions" that "appear[ed] to be 'radically different from the hypothetical agreement under consideration,'" for a domestic license for two patents). The Kathrein license, which was a "vastly different situation", cannot support a sound royalty award here. *Lucent Techs*, 580 F.3d at 1301.

*/s/ Kelly E. Farnan*

Kelly E. Farnan (#4395)
Valerie A. Caras (#6608)
RICHARDS, LAYTON & FINGER, PA

OF COUNSEL:
Philip P. Caspers
Samuel A. Hamer
William F. Bullard
Tara C. Norgard
CARLSON, CASPERS, VANDENBURGH &
LINDQUIST, P.A.
225 South Sixth Street
Minneapolis, MN 55402

One Rodney Square
920 North King Street
Wilmington, DE 19801
302-651-7700
farnan@rlf.com
caras@rlf.com

*Attorneys for Defendants CommScope Technologies LLC and CommScope Holding Company, Inc.*

Dated: November 12, 2021

## CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2021, true and correct copies of the foregoing document were caused to be served on the following counsel of record as indicated:

**BY E-MAIL**
David Ellis Moore
Bindu Ann George Palapura
Stephanie E. O'Byrne
Potter Anderson & Corroon, LLP
1313 N. Market Street
Hercules Plaza, 6th Floor
Wilmington, DE 19801

**BY E-MAIL**
Cristofer I. Leffler
Michael Saunders
David D. Schumann
Cliff Win, Jr.
S.H. Michael Kim
Steven T. Skelley
Palani P. Rathinasamy
Folio Law Group PLLC
14512 Edgewater Lane NE
Lake Forest Park, WA 98155

**BY E-MAIL**
Joseph M. Abraham
Law Office of Joseph M. Abraham PLLC
13492 Research Boulevard, Suite 120
No. 177
Austin, TX 78750

*/s/ Kelly E. Farnan*
Kelly E. Farnan (#4395)

27